# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAUL LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-517-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Paul Lewis requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born June 22, 1954, and was fifty-eight years old at the time of the administrative hearing (Tr. 41). He earned his GED, and has worked as a heavy equipment operator (Tr. 54, 157). The claimant alleges he has been unable to work since June 2, 2011, due to asthma, emphysema, seizures, and high blood pressure (Tr. 156).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on June 2, 2011. His application was denied. ALJ Larry D. Shepherd held an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 26, 2013 (Tr. 21-30). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 416.967(c), with the additional limitations of: avoiding even moderate exposure to dusts, fumes, gases, odors, and poor ventilation, and hazards, such as unprotected heights and heavy machinery (Tr. 26). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled

because there was work he could perform in the regional and national economies, *e. g.*, dishwasher, janitor, and food prep worker (Tr. 29).

## Review

The claimant argues that the ALJ erred: (i) by failing to properly evaluate the opinion of his treating nurse practitioner, Brenda Winters; (ii) by inadequately developing the record when he failed to order a neurologist's opinion; and (iii) by failing to properly assess his mental impairment. The undersigned Magistrate Judge finds that the ALJ *did fail* to properly evaluate the opinion of the claimant's nurse practitioner, and the decision of the Commissioner should be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of a seizure disorder, chronic obstructive pulmonary disorder (COPD), and essential hypertension, as well as the nonsevere impairments of cervical spondylosis and mental impairments (Tr. 23). Relevant treatment records indicate that while in the charge of the Oklahoma Department of Corrections, the claimant was regularly treated for asthma and prescribed an inhaler (Tr. 229-269). After that time, the medical evidence reveals that Brenda Winters, ARNP – CNP, was the claimant's main treatment provider from at least July 2011 through the date of the decision, including medication management for the claimant's seizures, anxiety, depression, hypertension, and COPD (Tr. 367-373, 395-404). As to the claimant's seizures, the claimant reported initially that medication had reduced his seizures from three times per week to three times per month (Tr. 356), but continued to report seizures and that he had been to the emergency room for seizures at least twice in the forty-five days preceding a March 20, 2012 check-up (Tr. 363). On July 18, 2012,

Ms. Winters wrote a Progress Note stating that the claimant had the diagnoses of: (i) uncontrolled seizures because he could not afford the medication Keppra; (ii) depression and paranoia that leads to generalized panic attacks, an inability to be around crowds of people, or function well in a group; and (iii) controlled hypertension and COPD (Tr. 370). On September 20, 2012, the claimant reported having no seizures in the previous month after starting phenobarbital (Tr. 367), but reported seizures the following month while still on phenobarbital (Tr. 394). He again reported a seizure on January 21, 2013 (Tr. 398). On February 25, 2013, Ms. Winters noted that the claimant had applied for disability and stated that once he was approved he should receive referrals for neurology and pulmonology (Tr. 401).

The following day, Ms. Winters prepared a letter stating that the claimant's seizures had not been controlled for the previous six to eight months and was on four medications to manage his seizures, and that he was unable to drive or operate machinery which rendered him unable to hold down a job or work in the area in which he was trained (Tr. 402). Finally, she stated that the claimant's seizure activity warranted the services of a neurologist to determine the cause and most appropriate treatment (Tr. 402). A March 2013 trip to the emergency room resulted in a CT scan of the brain, which revealed mild cortical atrophy but an otherwise normal CT of the brain without contrast (Tr. 409).

Consultative examiner Jim L. Burke, D.O., examined the claimant on October 3, 2011, and assessed him with depression with anxiety by history, grand mal seizure disorder by history, hypertension by history, and COPD by history (Tr. 277). Dr. John

Pataki then reviewed the claimant's record and determined that he could perform work at all exertional levels but must avoid moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazards (Tr. 312-318).

In his written opinion, the ALJ summarized the medical evidence in the record, as well as the claimant's hearing testimony (Tr. 26-28). The ALJ, however, gave "no weight" to the "other source" evidence in the case, *i. e.*, Ms. Winters's treatment records and opinion (Tr. 28), stating that she was not an acceptable source of medical evidence nor was it supported by the evidence of record. He then noted the March 2013 CT scan of the brain (Tr. 28).

Social Security regulations provide for the proper consideration of "other source" opinions such as that provided by Ms. Winters herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v)

whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The ALJ noted at the outset of step four that he had considered opinion evidence in accordance with SSR 06-03p, but made no reference whatever to these factors in connection with the evaluation by Ms. Winters, then stated that he had rejected her opinion because she was not an "acceptable source," and it is therefore unclear whether he considered any of them. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original] [internal citations omitted]. *See also Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-1395 (9th Cir. 1984). This is particularly problematic where, as here, Ms. Winters has functioned as the claimant's main treatment provider.

Because the ALJ failed to properly consider the "other source" evidence provided by Ms. Winters, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

**Conclusion**

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence.  Accordingly, the undersigned RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**